UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

UNITED STATES OF AMERICA,

v.

SAIQUAN ROBINSON,

                            Petitioner-Defendant.
-------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 6, 2025
```

20-CR-415 (KMW)
24-CV-6640 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

Petitioner Saiquan Robinson, proceeding *pro se*, moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on the basis of ineffective assistance of counsel.  (Pet'r's Mot., ECF No. 108.[1])  The Government opposes Robinson's motion.  (Gov't Opp'n, ECF No. 116.)  For the reasons set forth below, Robinson's motion is DENIED.

## BACKGROUND

Robinson is currently serving a 120-month sentence for possession of ammunition following a felony conviction, in violation of 18 U.S.C. § 922(g)(1).  On the evening of May 26, 2020, Robinson got into a fight with two individuals (the "victims") outside the Millbrook Housing Complex in the Bronx, where the victims lived with Robinson's cousin.  (Presentence Investigation Report ("PSR") ¶ 6, ECF No. 75.)  During the fight, Robinson slapped one of the victims, and the victims slapped and kicked Robinson, in front of Robinson's family and friends.  (*Id.*)  After the fight ended, Robinson left the area.  (*Id.* ¶ 7.)  The two victims, fearing that Robinson would retaliate, packed up their belongings and began loading them into a car parked

---

[1] ECF numbers refer to Petitioner's criminal docket, unless otherwise noted.

outside the housing complex.  (*Id.*)  Approximately one hour after the fight, Robinson approached the victims as they stood next to their car.  (*Id.* ¶ 8.)  Robinson brandished a firearm and fired three gunshots at the victims, hitting their car and another car parked in front of it.  (*Id.*)  The victims ran and Robinson chased them, firing two more shots during the chase.  (*Id.* ¶ 9.)  The victims did not sustain any gunshot wounds.  (*Id.*)  New York Police Department officers later arrived at the scene and found one Winchester 9-millimeter shell casing near where Robinson fired his last shot.  (*Id.* ¶ 10.)

On August 18, 2020, Robinson was charged in a single-count Indictment with possession of ammunition following a felony conviction, in violation of 18 U.S.C. § 922(g)(1).  (*Id.* ¶ 1; Indictment, ECF No. 2.)  On August 26, 2020, Robinson was arrested pursuant to a federal arrest warrant issued that same day.  (PSR ¶ 11.)

Between indictment and sentencing, Robinson was represented by five different lawyers. In this motion, Robinson alleges ineffective assistance by the last of his lawyers: Lance A. Clarke, who represented Robinson at the time of his plea, and David Stern, who represented Robinson at sentencing.  (Clarke Aff. ¶¶ 2, 6, 8, ECF No. 114; Stern Aff. ¶¶ 2, 9, ECF No. 115.) Both lawyers were appointed pursuant to this District's Criminal Justice Act.

On July 12, 2021, as jury selection in Robinson's trial was about to begin, Robinson appeared before this Court and pleaded guilty.  (PSR ¶ 2; Gov't Opp'n at 4-5.)  Although there was no plea agreement, the Government had provided Robinson with two *Pimentel* letters.  The first *Pimentel* letter, dated December 28, 2020, estimated that Robinson's sentencing range under the Sentencing Guidelines would be 108 to 120 months' imprisonment.  (ECF No. 22 at 3-6.) The second *Pimentel* letter, dated July 12, 2021, was given to Robinson prior to his plea.  In that letter, the Government no longer agreed to a one-level reduction for timely acceptance of

2

responsibility, in light of Robinson's decision to plead guilty only on the morning of jury

selection.  (Pet'r's Mot., Ex. A; Gov't Sent'g Submission at 4, ECF No. 98.)  Without that one-

level reduction, Robinson's sentencing range became 121 to 151 months (which exceeded the

statutory maximum sentence of 120 months).  (Pet'r's Mot., Ex. A at 3.)  Both *Pimentel* letters

outlined the Government's position that pursuant to U.S.S.G. § 2K2.1(c), a cross-reference to

U.S.S.G. § 2A2.1(a)(1)—the guideline for attempted murder in the first degree—was appropriate

to reflect Robinson's actual conduct.  (*See* Gov't Opp'n at 5.)

During his plea allocution, Robinson swore under oath that he had read the July 12, 2021

*Pimentel* letter, discussed it with his attorney Lance A. Clarke, and was satisfied with his

attorney's representation.  (Plea Tr. 2:11-13; 4:22-24; 15:1-4, ECF No. 73.)  Robinson confirmed

that he understood that the Court could sentence him to a maximum term of ten years in prison.

(*Id.* at 7:15-23.)  Robinson also confirmed that he understood that at sentencing, the Court could

take into account the actual conduct in which Robinson engaged, and that Probation would

similarly take into account Robinson's actual conduct when calculating his Guidelines range.

(*Id.* at 8:13-22; 9:4-11.)  The Court accepted Robinson's guilty plea after concluding that

Robinson "kn[e]w [his] rights" and that his "plea [was] entered knowingly and voluntarily and

[was] supported by an independent basis in fact containing each of the essential elements of the

offense."  (*Id.* at 15:10-17.)  On October 12, 2021, the Court granted Robinson's request to

replace Lance A. Clarke as defense counsel, and appointed CJA attorney David Stern.  (October

12, 2021 Tr., ECF No. 83.)

On February 23, 2022, the Court held a status conference, during which the Court met *ex*

*parte* with Robinson and his counsel.  (February 23, 2022 Tr., ECF. No. 89.)  During that

meeting, counsel informed the Court that Robinson wanted to object to any Guidelines

calculation construing his conduct as attempted murder.  (*Id.* at 4:4-8.)  Counsel stated that he

was willing to object and that he had explained to Robinson that objecting would lead to a

hearing pursuant to *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979).  (*Id.* at 4:17-23.)

However, Robinson refused to move forward with a *Fatico* hearing and continued to insist that

he be able to object without the Court holding a *Fatico* hearing.  (*Id.* at 6:13-19; *see also* Gov't

Opp'n at 6-8.)  Returning to open court, the Government outlined its Guidelines calculation and

confirmed that it would request a *Fatico* hearing if Robinson objected.  (February 23, 2022 Tr.

11:21-14:10.)  The Government then described the witnesses who would testify and previewed

the evidence it would introduce at a *Fatico* hearing to prove that Robinson's conduct amounted

to attempted murder.  (*Id.* at 14:18-15:16.)  After allowing Robinson and counsel to consult in

private, the Court met *ex parte* with Robinson and his counsel again.  Counsel stated that he had

spoken with Robinson and that although Robinson was not "satisfied with the attempted murder

guidelines . . . he underst[ood] that those [were] the applicable guidelines and he [was] prepared

to have [counsel] get to work on a sentencing memorandum."  (*Id.* at 16:6-11.)  The Court then

asked: "Is that your view, Mr. Robinson?"  (*Id.* at 16:17.)  Robinson responded: "Yes, ma'am."

(*Id.* at 16:18; Gov't Opp'n at 8.)  The Court therefore determined that Robinson "underst[ood]

how the guidelines work" and was ready to proceed to sentencing without a *Fatico* hearing.

(February 23, 2022 Tr. 18:2-4.)

   On August 1, 2022, the Court sentenced Robinson to the statutory maximum of 120

months' imprisonment.  (Sent'g Tr. 16:5-7, ECF No. 103; J. at 2, ECF No. 99.)  On February 14,

2024, the Second Circuit affirmed the judgment, holding that the Court did not procedurally err

when it calculated Robinson's base offense level using U.S.S.G. § 2A2.1, without an express

finding that Robinson intended to kill someone.  *See United States v. Robinson*, 2024 WL

619298, at *1–2 (2d Cir. Feb. 14, 2024) (summary order).  The Second Circuit noted that the

PSR mirrored the Guidelines calculation in the *Pimentel* letters, and that Robinson accepted the

PSR Guidelines calculation when he (1) "affirmatively indicated his agreement" in his

sentencing memorandum and (2) "made the tactical decision" to forgo "the opportunity to

require the government to present the evidence in support of the PSR Guidelines calculation" at a

*Fatico* hearing.  *Id.* at *1.  The Second Circuit further held that even if the Court had erred by not

making an intent-to-kill finding, such an error would not have affected Robinson's substantial

rights, because the outcome of the proceeding would not have been different.  *Id.* at *2 (quoting

*Greer v. United States*, 593 U.S. 503, 507–08 (2021)).


## LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a federal prisoner may move to "vacate, set aside or correct

[his] sentence" if he believes his "sentence was imposed in violation of the Constitution or laws

of the United States[.]"  28 U.S.C. § 2255(a).  A petitioner may raise an ineffective assistance of

counsel claim in a Section 2255 motion.  *See Massaro v. United States*, 538 U.S. 500, 508–09

(2003).  A Section 2255 motion requires a hearing "[u]nless the motion and the files and records

of the case conclusively show that the prisoner is entitled to no relief[.]"  28 U.S.C. § 2255(b).

To succeed on an ineffective assistance of counsel claim, a petitioner must show that: (1)

his counsel's representation "fell below an objective standard of reasonableness" under

prevailing professional norms, and (2) this deficient performance "prejudice[d]" the defendant.

*United States v. Overton*, 24 F.4th 870, 880 (2d Cir. 2022) (quoting *Strickland v. Washington*,

466 U.S. 668, 688, 694 (1984)).  When considering the first prong, courts "strongly presume[ ]

[that counsel] rendered adequate assistance and made all significant decisions in the exercise of

reasonable professional judgment[.]" *Jackson v. Conway*, 763 F.3d 115, 152 (2d Cir. 2014)

(quoting *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011)).  With respect to the second prong,

courts consider whether there is a "reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different."  *Jackson*, 763 F.3d at 153

(quoting *Strickland*, 466 U.S. at 694).

Courts need not conduct the *Strickland* inquiry in a specific order.  Rather, "[i]f the

defendant does not successfully establish either the deficient performance prong or the prejudice

prong, the entire claim fails, and the remaining, unaddressed step becomes moot."  *United States*

*v. Akintola*, No. 21-CR-472, 2024 WL 1555304, at *7 (S.D.N.Y. Apr. 10, 2024) (Failla, J.)

(citing *Strickland*, 466 U.S. at 697)).

## DISCUSSION

Robinson claims that both defense counsel rendered constitutionally deficient

representation because they each failed to object to the PSR's Guidelines calculation, specifically

the application of U.S.S.G. § 2A2.1, the attempted murder guideline.  Before turning to the

merits of Robinson's motion, the Court addresses whether a hearing is necessary.

## I.    No Hearing Is Required to Rule on Robinson's Section 2255 Motion

Section 2255 requires a court to grant a hearing "[u]nless the motion and the files and

records of the case conclusively show that the prisoner is entitled to no relief[.]"  28 U.S.C.

§ 2255(b).  Based on the parties' submissions, the Court finds that no hearing is required.

Following Robinson's submission of his present motion, the Court requested, and

Robinson consented to, a waiver of attorney-client privilege to obtain affidavits from his two

former attorneys regarding his claims.  (*See* Order, ECF No. 111; Attorney-Client Privilege

Waiver (Informed Consent), ECF No. 113.)  Both counsels' affidavits respond directly to

Robinson's ineffective assistance of counsel claims.  (*See* Clarke Aff.; Stern Aff.)  The record—

consisting of the two *Pimentel* letters, status conference transcripts, the plea and sentencing

transcripts, the PSR, the parties' sentencing submissions, and petitioner's and counsels'

affidavits—is sufficient to dispose of Robinson's claims, as discussed *supra*.

Because additional testimony would not clarify or meaningfully add to the record, the

Court concludes that the parties' written submissions are sufficient to decide Robinson's motion,

and that no hearing is required.  This "avoid[s] the delay, the needless expenditure of judicial

resources, the burden on trial counsel and the government . . . that would have resulted from a

full testimonial hearing."  *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001).

## II.    Robinson's Counsel Were Not Ineffective By Declining to Object to the PSR

Robinson argues that both Lance A. Clarke and David Stern were ineffective because

they did not object to the PSR's application of U.S.S.G. § 2A2.1, the guideline for attempted

murder, after Robinson repeatedly asked them to do so.  (Pet'r's Mot. at *2, *7, *31.)  Robinson

does not argue that his plea was involuntary or otherwise invalid.  (*Id.* at *36; *see also* Gov't

Opp'n at 1 n.1.)  Rather, he challenges his "unconstitutional sentence," claiming that had his

attorneys objected to the PSR, he "would have had a better outcome" and would have received a

shorter sentence.  (Pet'r's Mot. at *7, *31, *36.)

Each counsel's decision not to object to the attempted murder guideline was not

unreasonable because "the failure to make a meritless argument does not rise to the level of

ineffective assistance."  *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995); *see also*

*Marte v. United States*, No. 02-CR-1490, 2012 WL 2953723, at *7 (S.D.N.Y. July 20, 2012)

(Wood, J.) (denying ineffective assistance of counsel claim for failure to object to leadership

enhancement where it was clear that the Government could establish petitioner's leadership role and "any effort to dispute this finding would have been ineffective"). As this Court found at sentencing, after Robinson initially fought with the victims, he went back to his apartment for an hour—during which he had time to consider his next steps—and then came back outside with a gun. Robinson shot at the victims, and, as they ran away, he chased them and continued to shoot at them. (Sent'g Tr. 14:13-23.) In light of this conduct, the Court found that application of U.S.S.G. § 2A2.1 was appropriate, and any effort to dispute this finding would have been ineffective.

The record also demonstrates that objecting to the attempted murder guideline would have inevitably triggered a *Fatico* hearing, which Robinson made the choice to forgo:

> Robinson requested that counsel challenge the calculation of the Sentencing Guidelines. Counsel explained that if Robinson chose to contest the application of the attempted murder [guideline], the Government would proceed with a Fatico hearing to present its evidence. Robinson did not want to proceed with a Fatico hearing. (Clarke Aff. ¶ 11.)

> [Robinson] wanted me to object to the Guidelines calculation and secure a lower Guidelines range but did not want to have a *Fatico* hearing. I repeatedly explained that that was not possible because any defense objection to the attempted-murder cross-reference would force a *Fatico* hearing, but Robinson was unwilling or unable to accept what I was telling him. (Stern Aff. ¶ 6.)

The Second Circuit recognized that it was Robinson's choice not to request a *Fatico* hearing, noting that Robinson "concede[d] that he declined to pursue a *Fatico* hearing, preferring to 'allow[] the court to base its sentencing decision on his conduct as described in the PSR." *Robinson*, 2024 WL 619298, at *1 (quoting Appellant's Reply Br. at 7).

Furthermore, the decision not to pursue a *Fatico* hearing could be seen as a reasonable, strategic decision by counsel. *See United States v. Lee*, 818 F.2d 1052, 1056 (2d Cir. 1987)

(explaining that the decision to forgo a *Fatico* hearing may be tactical).  At a *Fatico* hearing, the Government would have presented evidence of Robinson's actions to support the attempted murder guideline.  As detailed in the PSR and described at the February 23, 2022 conference, the Government had witnesses, including the victims, who would testify that one hour after they had gotten into a fight with Robinson, he returned to the scene, brandished a gun, chased them, and fired five shots at them.  The Government also possessed video footage showing the same.  By avoiding a *Fatico* hearing, both defense counsel made the reasonable decision, in consultation with Robinson, to avoid highlighting this damaging evidence to the Court and to ensure that Robinson would receive credit for acceptance of responsibility.  Robinson has failed to demonstrate that counsels' decision not to object to the PSR and proceed with a *Fatico* hearing was unreasonable.  *See United States v. Costa*, 423 F. App'x 5, 8–9 (2d Cir. 2011) (summary order) (holding that counsel's strategic decision not to request a *Fatico* hearing "falls within the range of reasonable professional assistance").

Robinson attempts to compare his case to other cases in this District, where defendants charged with possession of ammunition were not subjected to the attempted murder guideline because the Government failed to prove that those defendants had a specific intent to kill when they fired their guns.  (Pet'r's Reply at *11-12, ECF No. 118.)  Robinson argues that the facts of these cases are "identical" to his own, and therefore his Guidelines calculation should not have relied on the attempted murder guideline.  The cases Robinson cites are easily distinguishable.  In both cases, the court held a *Fatico* hearing to evaluate whether the defendant's conduct warranted application of the attempted murder guideline.  *United States v. Belmar*, No. 21-CR-16, 2024 WL 2798860, at *1 (S.D.N.Y. May 31, 2024) (Wood, J.); *United States v. Lucas*, 2023 WL 4209628, at *1 (E.D.N.Y. June 26, 2023) (Brodie, C.J.).  Robinson refused to proceed with a

*Fatico* hearing despite multiple opportunities to do so.  Moreover, the facts of *Belmar* and *Lucas* are not identical to Robinson's case, as he claims.  In *Belmar*, the defendant did not shoot at the victims from close range.  *Belmar*, 2024 WL 2798860, at *5.  In *Lucas*, the defendant did not know the victims personally and did not chase them as they ran away.  *Lucas*, 2023 WL 4209628, at *3.  Robinson's argument that these cases demonstrate unwarranted sentencing disparities, Pet'r's Reply at *14, is therefore meritless.

## CONCLUSION

For the foregoing reasons, the Court denies Robinson's motion.[2]  Because Robinson has not made a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability.  *See* 28 U.S.C. § 2253.  Furthermore, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this Order would not be taken in good faith and thus Robinson may not proceed *in forma pauperis* for any such appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  The Clerk of Court is respectfully directed to close the pending motion at ECF No. 108 and mail a copy of this Opinion and Order to Robinson.

SO ORDERED.

Dated: New York, New York
       June 6, 2025

_____/s/ Kimba M. Wood_____
          Kimba M. Wood
     United States District Judge

---

[2] To the extent the Court does not address any particular claim within Robinson's papers, the Court has considered each claim, and considers each meritless.